IN THE MATTER OF THE APPLICATION OF EMMA
  L. KAIPU for a Writ of *Habeas Corpus* for MIKALA
  KAIPU.

January 5, 1905.

*Construction of a Statute:* The Hawaiian statute authorizing the
Board of Health to segregate leprous patients who are "deemed capable
of spreading the disease of leprosy," does not require that such capa-
bility shall be absolutely demonstrated.

In such proceedings the opinion of the Board of Health, based on
medical advice, that such person is capable of spreading the disease, is
sufficient.

*Habeas Corpus.*

C. W. Ashford, Attorney for Petitioner.

Lorrin Andrews, Attorney-General of the Territory, for Re-
spondent.

DOLE, J.    A writ of Habeas Corpus was prayed for by the
petitioner for the liberation of her mother, who was held in
custody by the Board of Health because she was deemed by them
to be capable of spreading the disease of leprosy.   The case has
narrowed down to the issue of the capability of Mikala Kaipu
of spreading the disease of leprosy, the issue of the existence
of the disease, I understand, having been disposed of in favor
of its presence in her person.

The court feels personally much sympathy for the petitioner
and her mother, and a great deal of admiration for the filial
affection and devotion of the petitioner, and her perseverance
and effort to procure her mother's liberty.

I think the statute is significant in recognizing the difficulty
of having a matter of this kind scientifically demonstrated, and
apparently, in view of this difficulty, it has used the word
"deemed."    The statute does not say that a person who is cap-
able of spreading the disease shall be placed in custody, but
one who "shall be deemed capable" of it, which I believe refers

to an expression of opinion by the medical examiners or medical experts in such cases. If it had been intended to be a question of scientific demonstration, I think the language would have been different and would not have made it a matter of opinion as it appears to have done. Five physicians have examined this case in a bacteriological way and several other physicians have testified in regard to the capability of this person of spreading the disease in view of the evidence of those who made the examinations; and of all these physicians, not only those who made the examination, but the others also deem the person in question capable of spreading the disease of leprosy. I believe that the court is bound by that. The court has to depend on those experts for information in this matter and has nothing to go on against such information. The argument of counsel that the capability of spreading this disease, when present, depends upon certain conditions of the skin or the presence of the disease in the nasal cavity or other parts of the mucous membrane, does not entirely cover the case, because, outside of all those conditions, there is in the minds of the physicians, an element of danger where the disease is present, that in some way, not fully understood by the profession, the disease is communicable. This appears from the evidence to be the concensus of medical opinion on the subject, and I do not feel that the court has anything in this case to justify it in ignoring this medical evidence, which is unanimous.

I believe that this case has been of great value. I have no doubt that it will influence the Board of Health in the direction of great care. The Board of Health officers have been very conscientious and very faithful in their attention to cases of this character, but, as petitioner's counsel says, these cases should be conducted with the utmost care and disregard of inconvenience and expense, in order that no one should be deprived of liberty and all that that means, unless it is satisfactorily determined that he is capable of spreading this disease. The disease is so terrible that the precautions against its being

spread have been very strict, but they are supported by the public sentiment of these Islands.

I should like to compliment the counsel for the petitioner upon his able and reasonable management of this case, which has been conducted from first to last on its merits. The court has allowed liberty,—more liberty to the counsel for the petitioner than he was entitled to in some instances, and was willing to do so because of the character of this case and in order that it might be probed to the bottom, that there might be no basis of an impression by the public that any information had been shut off, or any opportunity withheld.

The writ must be dismissed and the person for whom the writ was asked returned to the custody of the Board of Health. The costs, when they are ascertained, will be for the petitioner to pay.